

Christopher G. Salloum
Associate

direct: 973-607-1267
csalloum@lawfirm.ms

June 26, 2020

**VIA ECF**

The Honorable John M. Vazquez, U.S.D.J.
U.S. District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

      **RE:**  *Salerno Medical Associates, LLP v. Chintan Trivedi,* **et al.**
            **Civil Action No. 2:20-cv-07076-JMV-JBC**

Dear Judge Vazquez:

    We represent plaintiff, Salerno Medical Associates, LLP ("Plaintiff" or "SMA"), in the above-referenced matter. We are writing to respond to the letter filed by counsel for the defendants ("Defense Counsel") at approximately 11:22 a.m. today.

    Defense Counsel's letter mischaracterizes the nature of the off-the-record discussion that occurred during the telephone conference yesterday. During a back-and-forth exchange regarding defendants' request for additional information that they claim is required to address the connectivity issues Plaintiff has been recently experiencing, the undersigned indicated that, following a discussion with Plaintiff, the undersigned was advised that defendants' requests, in addition to being unnecessary to resolve the connectivity issues, would be too burdensome for Plaintiff. In an apparent attempt to paint Plaintiff as not having acted in good faith, Defense Counsel represented that he had made a second, purportedly less burdensome, request

The Hon. John M. Vazquez, U.S.D.J.
June 26, 2020
Page 2



to which Plaintiff had not responded. The undersigned initially denied that such a request had been made. Following a quick review of emails, however, the undersigned was reminded, and advised the Court on the record, that there was an email from Defense Counsel that requested, in what was represented to the Court during the telephone conference to be an alternative to defendants' initial request, the allegedly "very simple info" of "username and time of error" ("Defense Counsel's Second Request").

The undersigned had not construed Defense Counsel's Second Request to be less burdensome than his initial request, and, for this reason, was surprised by Defense Counsel's representation during the off-the-record portion of yesterday's conference call that there had been a second, less burdensome, request, and thus responded in the negative to Your Honor's question whether such a request had been made.

This is for a simple reason: during a discussion with the undersigned about Defense Counsel's Second (and ostensibly different) Request, Vincent Zafonte, Plaintiff's Information Technology ("IT") Manager with nearly three decades of IT experience, advised that Defense Counsel's Second Request was, in fact, essentially the same as the first and just as burdensome. As Mr. Zafonte declares: "the only way to provide the allegedly 'very simple info'" sought by Defense Counsel "would be to gather the [previously-requested] event logs that . . . would take one of SMA's two IT staffers, dedicated exclusively to this task, approximately one full work week to complete." *See* Declaration of Vincent Zafonte ("Zafonte Decl."), attached hereto without its exhibits, at ¶ 16.[1]

In addition, we note that it is not accurate that IMS has received no communications from Plaintiff regarding its requests. As Mr. Zafonte declares, and as will be expounded upon in the forthcoming Amended Verified Complaint, "whenever error messages appear, SMA routinely *telephones* IMS to seek assistance and in so doing, identifies and explains *over the phone* the nature of the problem." Zafonte Decl, at ¶ 17 (emphases added).

---

[1] The Zafonte Decl., with its two exhibits (which are the emails that Defense Counsel appended to his letter), will be submitted with Plaintiff's forthcoming Amended Verified Complaint.

The Hon. John M. Vazquez, U.S.D.J.
June 26, 2020
Page 3



The Court should not assume the truth of Defense Counsel's representation during the conference call that Defense Counsel's Second Request is any less burdensome than his initial request. Instead, the Court should afford greater weight to the declaration of Vincente Zafonte (who is Plaintiff's IT Manager with nearly three decades of IT experience) than the representations of Defense Counsel (who is not qualified to opine on IT-related issues) with respect to the burdens of either of Defense Counsel's requests.

Plaintiff emphatically maintains that defendants' requests for additional information are nothing more than part of a campaign of smoke and mirrors waged by defendants to obfuscate the reality that defendants continue to hold Plaintiff's data hostage. The requests serve only to compound the injury, damage, and prejudice that Plaintiff has sustained, and, unless defendants are enjoined, will continue to sustain, as a result of defendants' misconduct as alleged in Plaintiff's pleadings. Defendants are seeking information from Plaintiff that defendants generate and maintain in the ordinary course of business, and which should already be at defendants' fingertips. *See* Zafonte Decl., at ¶ 18.

For these reasons, and for those set forth in Mr. Zafonte's declaration, we respectfully submit that the existence of Defense Counsel's Second Request does not constitute good cause to afford defendants additional time to respond to Plaintiff's emergent motion. The Court, therefore, should deny the request.

We thank the Court for its consideration of this correspondence. Should the Court require any additional information, we will endeavor to provide it.

Respectfully submitted,

MANDELBAUM SALSBURG, P.C.

By: _____
Christopher G. Salloum

Encl.
    Declaration of Vincent Zafonte

**Christopher G. Salloum, Esq.**
**Steven W. Teppler, Esq.**
**MANDELBAUM SALSBURG, P.C.**
**3 Becker Farm Road – Suite 105**
**Roseland, New Jersey 07068**
**Tel. 973-736-4600**
**Fax. 973-736-4670**
**Attorneys for Plaintiff**
  **Salerno Medical Associates, LLP**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SALERNO MEDICAL ASSOCIATES, LLP,<br><br>Plaintiff,<br><br>v.<br><br><br>INTEGRITY PRACTICE SOLUTIONS, LLC; INTEGRITY MEDICAL SYSTEMS, LLC; CHINTAN TRIVEDI; JOHN DOES 1-10; and ABC CORPORATIONS 1-10,<br><br>Defendants. | Civil Action No.<br>2:20-cv-07076-JMV-JVC<br><br>Hon. John M. Vazquez, U.S.D.J.<br>Hon. James B. Clark, U.S.M.J.<br><br><br>**DECLARATION**<br>**OF VINCENT ZAFONTE** |

I, Vincent Zafonte, of full age, say as follows:

1.     For nearly three decades, I have worked as an information technology ("**IT**") professional. I am currently employed as the Manager of Information Technology for the plaintiff, Salerno Medical Associates, LLP ("**SMA**"), in the above-captioned matter. In early June 2020, I became a full-time employee of SMA, but my affiliation with SMA began in or about October 2019, when I started working as an IT consultant for SMA. I am one of two full-time IT personnel that SMA employs. I have personal knowledge of the facts that I recite herein.

2. In my capacity as a consultant and now as a full-time employee, I have been, and remain, responsible for, among many other things, responding to any technological issues and problems that SMA staff may experience related to SMA's computer systems and networks, and any applications that SMA utilizes in connection therewith.

3. Over the course of my work for SMA, I have become familiar with the various problems, both technological and professional, that SMA has encountered in connection with the electronic medical recordkeeping ("**EMR**") services that defendant, Integrity Medical Systems, LLC ("**IMS**"), has been providing SMA.

4. The EMR services that IMS has been providing SMA includes, without limitation, the hosting, on IMS's servers, of the PHI of approximately 16,000 SMA patients, including, without limitation, patients' names, patients' telephone numbers, patients' addresses, patients' medical records, patients' radiograph images, laboratory results, and other information and documents regarding a patient's health status and the provision of, and payment for, medical services provided to SMA patients (the "**SMA Patient Data**").

5. Prior to the emergence of a dispute between SMA and IMS (and the other co-defendants in this action), SMA did not receive nearly as numerous, pervasive, and significant complaints regarding problems with IMS's EMR services and systems and the SMA Patient Data contained thereon. Recently, over the past month or so, I have received numerous complaints and requests for assistance from dozens of SMA staff members, both administrative and professional, complaining, among other things, that they are no longer able to print anything from the IMS system, that they are unable to view patient laboratory and other patient test results, that the IMS system is down or otherwise inaccessible, and that the IMS system is slow and unresponsive.

6. At times, the entire IMS system is down and inaccessible to anyone at SMA. Indeed, for example, as recently as Monday, June 22, 2020, the entire system was down for half a day, and an error message appeared that suggests that either IMS purposefully cut SMA off or that IMS's servers were not functioning at the time. The following is a screenshot of the error message that appeared:



7. In my past experiences working with vendors whose applications and products use the same underlying technology as IMS, I have never before experienced the significant and pervasive connectivity issues like those which SMA has been experiencing with IMS's application since its settlement talks with IMS fell through. This suggests to me that either IMS's servers and systems are not functioning and are unable to handle SMA's needs, or that IMS is purposefully sabotaging SMA.

8. I have reviewed an email dated June 23, 2020 that IMS, through its counsel, Jason Silberberg, Esq., sent to SMA's counsel advising SMA of IMS's purported findings of an alleged "preliminary review" of the various connectivity issues that SMA has recently been experiencing and which have been brought to IMS's attention. Attached hereto as **Exhibit A** is a copy of the email that I reviewed.

9. In that email, IMS attempts to cast blame upon SMA for the recent disruptions in service that SMA has experienced, and, in an attempt to give the appearance of being helpful, requests additional information from SMA, claiming that such information is necessary to determine whether there is evidence of connectivity issues. Specifically, IMS demands that it must

"review specific session logs from the computers that have experienced the connectivity issues alleged" as well as the "same session logs from those computers that did not experience any of the alleged connectivity issues," and, in connection with that request, provides directions for SMA "to follow to identify and produce the logs in question"  ("**Mr. Silberberg's First Request**").

10. I begin by responding that, contrary to IMS's email's insinuation, SMA's internet connection, at all locations, is more than sufficient to address all of SMA's internet connection needs.  Indeed, during my time working with SMA, SMA has never before experienced major connectivity issues on any other application besides IMS's.

11. I also note that, in my decades of IT experience, I have never before seen a vendor place the onus on the user to identify, and explain why there are, problems on the vendor's side.

12. Next, to a reasonable degree of professional certainty, the "session logs" that IMS is requesting will not, in fact, provide IMS with any useful information that it will be able to utilize to address the connectivity issues that SMA has recently been experiencing in connection with IMS's system.  Such logs are cryptic, and do not actually reveal what has happened beyond identifying users and repeating the error messages that already appeared on the computer following the connectivity issue.  These error messages are routinely provided by SMA to IMS whenever SMA brings to IMS's attention various connectivity issues.  And, besides, IMS has the capability of determining in-house, as IMS has done before, the origin of the problems.

13. Finally, never before during my time working with SMA has IMS requested of SMA information of the sort that IMS is now requesting under the façade of responding to the connectivity issues that SMA has recently been experiencing.  In the past, whenever SMA brought to IMS's attention connectivity or other issues that SMA was experiencing with IMS's system and services, IMS would usually work quickly to resolve the issue without requiring SMA to provide

"verification" or "evidence" of the problem or requiring IMS to jump through numerous hurdles to get the problem fixed.

14. Indeed, IMS's (unnecessary, as noted above) request to review all the event logs on devices having an issue would require an inordinate amount of time from SMA's small IT staff. Given the nature of IMS's unnecessary requests, I estimate that it would take one SMA IT staff member (and there are only two), dedicated *exclusively* to gathering the unnecessary information that IMS is now requesting, approximately one full work week to complete IMS's unnecessarily-requested tasks.

15. I have also reviewed Mr. Silberberg's response, sent at or about 5:18 p.m. on June 23, 2020, to SMA's counsel's response to the above-mentioned June 23, 2020 email in which Mr. Silberberg proposed that, as a purported alternative to the above-described unnecessary requests, that SMA provide additional allegedly "very simple info" that allegedly "could go a long way in helping us verify/address the issue." Specifically, he asked that SMA please "advise when the error messages were received (even roughly) and which user received them" ("**Mr. Silberberg's Second Request**"). That email is attached hereto as **Exhibit B**, along with SMA counsel's response.

16. Like Mr. Silberberg's First Request, Mr. Silberberg's Second Request, too, is unnecessary, burdensome, and designed only to obfuscate and delay SMA. **As a threshold matter, I note that the only way to provide the allegedly "very simple info" that Mr. Silberberg's Second Request is seeking would be to gather the event logs that, as I indicated earlier, would take one of SMA's two IT staffers, dedicated exclusively to this task, approximately one full work week to complete.** Mr. Silberberg's Second Request for allegedly "very simple info" is nothing more than a restatement of the same request he had made in his initial

email. And, for the same reasons that Mr. Silberberg's First Request is unduly burdensome, so, too, is Mr. Silberberg's Second Request. **In truth, Mr. Silberberg's First Request and Mr. Silberberg's Second Request are one and the same.**

17. In any event, however, whenever error messages appear, SMA routinely telephones IMS to seek assistance and in so doing, identifies and explains over the phone the nature of the problem. IMS, presumably, should take note of SMA's calls and, presuming IMS is acting in good faith, would endeavor to solve the issue.

18. **At bottom, there is nothing on SMA's end that could explain what has happened and what is causing the severe connectivity issues that SMA has been experiencing with IMS's system. All the information that IMS needs to evaluate, and correct, the issues SMA has been experiencing is already in IMS's hands.**

19. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: June 26, 2020

_____
Vincent Zafonte